**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

CHIEN-MIN SUNG,

Plaintiff,

v.

KINIK COMPANY,

Defendant.

**Civil Action No. ______________**

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Chien-Min Sung, Ph.D. ("Dr. Sung" or "Plaintiff"), for its Complaint against Defendant Kinik Company ("Defendant"), alleges the following:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

## THE PARTIES

2. Plaintiff Dr. Sung is an individual residing at No. 4, Lane 32, Chung Cheng Road, Tansui, Taipei, Taiwan.

3. Upon information and belief, Kinik Company ("Kinik") is a Taiwanese corporation organized and existing under the laws of Republic of China (R.O.C.), with a place of business at No.64, Zhongshan Rd., Yingge Dist., New Taipei City 23942, Taiwan (R.O.C.). Upon information and belief, Kinik sells and offers to sell products and services throughout the United States, including in this judicial district, and introduces products and services that perform infringing processes into the stream of commerce knowing that they would be sold in this judicial district and elsewhere in the United States.

4. Kinik is engaged in the business of manufacturing abrasive articles, including bonded abrasive products, coated abrasive products, superabrasive products, polycrystalline diamond tools, and grinding wheels and segments. On information and belief, Kinik designs, develops, manufactures, sells, offers to sell, and imports a wide range of chemical mechanical polishing (CMP)-related products and components, including, *inter alia*, pad dressers (e.g., diamond dressers), diamond disks, and other similar dressers and dressing tools.

5. On information and belief, Kinik makes, uses, sells, offers to sell, markets, and imports its products and services throughout the United States, including in this District, through its website and other media, through major retailers in North America and its subsidiary Kinik North America, and in concert and partnership with third parties who sell Kinik's products, either exclusively or together with others.

6. Plaintiff seeks monetary damages and prejudgment interest for Kinik's past and ongoing direct and indirect infringement of the Asserted Patent.

## BACKGROUND

7. Plaintiff Dr. Sung is the inventor, assignee, and owner of the asserted U.S. Patent No. 9,724,802 ("the '802 Patent"). Dr. Sung is a pioneer in the field of "diamond discs," and is the named inventor on over 100 U.S. patents and 300 international patents related to diamond disk technology, including chemical mechanical polishing ("CMP") disk technology. CMP disks are an integral component in the manufacture of virtually every integrated circuit made today.

8. Defendant Kinik is a manufacturer of diamond disks. From 1996 to 2012, Plaintiff and Defendant collaborated under a Joint Venture Agreement ("JV Agreement") involving CMP disk technology, which was to expire on October 28, 2013. Their joint venture, however, abruptly ended in June 2012, more than a year before the planned termination of the

JV Agreement. *See Sung v. Kinik Co.*, Case No. 1:14-cv-01027-RGA, Dkt. 40, at 4 (D. Del. Nov. 30, 2015). Soon after, several domestic and foreign litigations followed involving the ownership and rights of 14 domestic and foreign patents generated from the joint venture, including three U.S. patents that Plaintiff asserted against Defendant in a patent infringement action in this District in 2014.

9. After issuing a stay but before reaching any substantive merits, Judge Andrews ordered closing the case administratively pending resolution of the parties' foreign related litigations and appeals in Taiwan involving ownership and rights of those 14 patents. *See Sung*, Dkt. 55, at 1.

10. Almost two years after the parties' joint venture had ended, on October 3, 2014, Plaintiff filed the patent application from which the '802 Patent issued. Neither the application nor the '802 Patent is identified in the parties' ongoing ownership dispute in their foreign litigations.

11. The application from which the '802 Patent issued, U.S. App. No. 14/506,476 (the "'476" application) was filed as a continuation-in-part. The '476 application, and thus the '802 Patent, discloses subject matter that is not previously disclosed in any of the parents or grandparent patents and patent applications from which the '802 Patent claims priority. The subject matter of the '476 application and '802 Patent was neither developed during the joint venture nor identified in the parties' ongoing ownership dispute.

## **JURISDICTION**

12. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

13. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

14. This Court has personal jurisdiction over Kinik, as Kinik voluntarily submitted to the Court's personal jurisdiction in another case involving the same parties. *See Sung v. Kinik Co.*, Case No. 1:14-cv-01027-RGA, Dkt. 32 (D. Del. Aug. 27, 2015).

15. Also, Kinik has systematic and continuous contacts with this forum. On information and belief, Kinik has systematic and continuous contacts with Delaware and this District because it conducts substantial business in Delaware and in this District. Kinik makes, uses, sells, offers to sell, and/or imports, within the state of Delaware and in this District, products, systems, and/or components that infringe one or more claims of the '802 Patent or that are the instrumentalities for infringing one or more of such claims. Kinik derives substantial revenue from the sale of infringing products, systems, components, and instrumentalities distributed within the District, and/or expects or should reasonably expect its actions to have consequences within the District. Kinik has committed and continues to commit acts of patent infringement in this District, including making, using, selling, offering to sell, and/or importing infringing products, systems, and components, practicing infringing methods within this District, and inducing and contributing to the infringement by others in this District, including by and through these activities described above.

**Venue**

16. Plaintiff incorporates and realleges paragraphs 1-15 above as if fully set forth herein.

17. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because Kinik is a foreign corporation and thus subject to personal jurisdiction in any district including in this District, and has regularly and purposefully conducted business in this District, and because certain infringing acts complained of herein occurred in this District.

18. On information and belief, Kinik—directly or through intermediaries (including distributors, retailers, and others), subsidiaries, alter egos, and/or agents—ships, distributes, offers for sale, imports, and/or sells its products, including infringing products (to be discussed below), in the United States and this District. Kinik has purposefully and voluntarily placed one or more of its products, including infringing products, into the stream of commerce with the awareness and/or intent that they will be purchased by consumers in this District, and that substantial revenue will be derived from products and services provided to individuals in this District and/or the manufacture of such products available for use or sale in this District. These products and services have been, and continue to be, purchased by consumers and businesses in this District.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,724,802

19. The allegations set forth in the foregoing paragraphs 1-18 are incorporated into this First Claim for Relief.

20. On August 8, 2017, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 9,724,802 ("the '802 Patent"), entitled "CMP Pad Dressers Having Leveled Tips and Associated Methods." A copy of the '802 Patent is attached hereto as Exhibit 1.

21. Plaintiff owns all substantial right, title, and interest in the '802 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

22. The '802 Patent generally relates to CMP pad dressers and dressing and conditioning methods associated with pad conditioning (e.g., smoothing, polishing, and dressing), and the CMP polishing of a work piece such as an integrated circuit or semiconductor wafer.

23. In manufacturing semiconductor wafers, one important physical trait is their surface flatness and smoothness. To achieve these important physical characteristics, CMP techniques, which involve pad polishing and conditioning, are generally used to planarize the wafer surface through both chemical and mechanical reactions, whereby protrusions and residues existing on the surface of a wafer chemically react with a slurry supplied to the wafer at the same time when they are planarized mechanically by rotation of a polishing pad. In CMP, the quality of the polishing pad dictates the removal rate, planarization, and uniformity, and thus plays a key role in the overall performance of the polishing process.

24. To optimize the condition and minimize deformation of the pad, a pad dresser is used to dress the pad so as to remove debris and by-products in the pad (e.g., deglazing the pad) and to regenerate new pad surface sufficient to open up asperities in the pad surface to capture and hold chemical slurry for cleaning the semiconductor wafer.

25. As discussed above, the pad dresser is used to create and form pad asperities in the pad, which in turn polish the semiconductor wafer. In polishing, the dresser's tips profile generally dictates the pad asperities profile. Due to the miniaturization of transistors and advancement of manufacturing technologies, these tips must be stringently coordinated (e.g., in terms of count, configuration, spacing, and cutting depth) to avoid any possibility of damaging the semiconductor wafer (e.g., via scratches on wafer surface or underlying metal-interconnect). The '802 Patent is directed to providing a pad dresser with optimized tips for performing CMP polishing.

26. Upon information and belief, Kinik has and continues to directly infringe one or more claims of the '802 Patent by making, using, selling, importing and/or providing and causing to be used products, systems, and/or components that are used to polish semiconductor

wafers, which include, without limitation, CMP polishing tools such as chemical pad dressers and conditioners.

27. More specifically, Kinik has infringed and continues to infringe Claims 1-21 of the ’802 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing in the United States without authority products, devices, systems, and/or components of systems that use a pad dresser or conditioner to dress or condition a polishing pad (e.g., a CMP polishing pad) with the claimed structural characteristics (“’802 Infringing Products”). The ’802 Infringing Products include, as examples and without limitation, conventional disks (e.g., DiaGrid, I-DiaGrid, S-DiaGrid), advanced disks (e.g., Pyradia, O-Pyradia, Hybride, and CVD-W), conditioning disks (e.g., diamond disks), and similar conditioning or dressing tools.

28. By way of example, a representative infringing product (e.g., a Pyradia disk) exhibiting the claimed structural characteristics is shown below:




*See Kinik Presentation to Merrill Lynch, available at* http://www.kinik.com.tw/upload/Download/2018-presentation%20material-Merill%20Lynch-English-201803.pdf ("Kinik Presentation") (last visited Feb. 5, 2020):

29. On information and belief, each '802 Infringing Product, including the representative infringing product, comprises a rigid support substrate (e.g., a support substrate, a stainless steel substrate, or "SS Substrate"):




*See* A. Scott Lawing, *Advances in CMP Pad Conditioning*, NCCAVS CMPUG Symposium on CMP Technology and Market Trends (Jul. 16, 2016), *available at* https://nccavs-usergroups.avs.org/wp-content/uploads/CMPUG2015/CMP2015_7_6Lawing.pdf (last visited Feb. 5, 2020) ("Advances in CMP Pad Conditioning"), at p.18; *see also* Kinik CMP Pad Conditioner, *available at* http://www.kinik.com.tw/upload/Product/Catalogue/CMPPadConditioner-us.pdf (last visited Feb. 5, 2020):

## Pad Conditioner Technology

| Classification | Appearance | Substrate material | Features |
|---|---|---|---|
| DiaGrid® |  | Metal substance | • Excellent diamond bonding<br>• Higher diamond protrusion (over 50% of each crystal): results in better circulation of slurry and more optimized pad textures<br>• Unique bond surface profile for less micro scratches |
| Pyradia® |  | Metal substance | • The protrusion of stick can be controlled good leveling<br>• With precision control of tip height, both cutting rate and pad roughness can be controlled |
| O-Pyradia® |  | Polymeric substance | • Metal free<br>• O-Pyradia retains the advantages of the original pyradia and does not produce any metal ions during the dressing process |

*See also Kinik Presentation*, at 9:

## New Generation Disk

| Product | DiaGrid® | I-DiaGrid® | S-DiaGrid® | Pyradia® | CVD Hybrid | CVD |
|---|---|---|---|---|---|---|
| Generation | Conventional Disk | | | Advanced Disk | | |
| Appearance (top) |  |  |  |  |  |  |
| Appearance (side) |  |  |  |  |  |  |
| Description | Direct substrate vacuum braze | Pre-stressed substrate vacuum braze | Insert on substrate vacuum braze | Fixed orientation, shaped diamond pre-set in substrate | Fixed orientation, shaped diamond pre-set in substrate with CVD pads | CVD |
| Coating | Non-coated<br>PVDD<br>ADLC | Non-coated | Non-coated | Non-coated | Non-Coated | Non-Coated |

30. On information and belief, each '802 Infringing Product, including the representative infringing product, comprises a monolayer of a plurality of superabrasive particles (e.g., "diamond" or "diamond crystals" labeled above) coupled to the support substrate (e.g., "SS Substrate" or "substrate" labeled above). Each superabrasive particle in the monolayer extends away from the support substrate to a protrusion distance (e.g., "Protrusion" extends away from "SS Substrate" as shown below):




*See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 17.

31. On information and belief, in each '802 Infringing Product, including the representative infringing product, a tip of each of the plurality of superabrasive particles aligns along a designated profile with a tip variation of from about 5 microns to about 100 microns. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 27 ("All (~200) of the working diamonds on the Pyradia disc exhibit a protrusion height range of less than 10 μm"). Also, the difference in protrusion distance between the highest protruding tip and the second highest protruding tip of

the monolayer of superabrasive particles is less than or equal to about 50 microns, and the difference in protrusion distance between the highest 1% of the protruding tips of the monolayer of superabrasive particles are within about 80 microns or less. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 27 ("The tallest 200 diamonds on the conventional disc exhibit a protrusion height range of 20 µm, and the full protrusion height range of the working diamonds is likely much higher than that").

32. On information and belief, in each '802 Infringing Product, including the representative infringing product, the difference in protrusion distance between the highest protruding tip and the second highest protruding tip is less than or equal to about 10 microns. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 27 ("All (~200) of the working diamonds on the Pyradia disc exhibit a protrusion height range of less than 10 µm"); *see also Kinik Presentation*, at 11 ("Leveling excellent control in less than 5µm"):



33. On information and belief, in each '802 Infringing Product, including the representative infringing product, the difference in protrusion distance between the highest protruding tip and the second highest protruding tip is less than about 10 microns. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 27; *see also Kinik Presentation*, at 11.

34. On information and belief, in each '802 Infringing Product, including the representative infringing product, the difference in protrusion distance between the highest protruding tip and the 10th highest protruding tip is less than or equal to about 20 microns (e.g., "less than 10 µm" or "less than 5 µm"). *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 27; *see also Kinik Presentation*, at 11.

35. On information and belief, in each '802 Infringing Product, including the representative infringing product, the difference in protrusion distance between the highest protruding tip and the 100th highest protruding tip is less than or equal to about 40 microns (e.g., "less than 10 µm" or "less than 5 µm"). *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 27; *see also Kinik Presentation*, at 11.

36. On information and belief, in each '802 Infringing Product, including the representative infringing product, the plurality of superabrasive particles includes a plurality of working superabrasive particles, such that rotating the dresser against a CMP pad cuts asperities into the CMP pad having a cutting depth of less than or equal to about 50 microns. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 27; *see also Kinik Presentation*, at 11.

37. On information and belief, in each '802 Infringing Product, including the representative infringing product, the cutting depth is from about 10 microns to about 50 microns. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 27; *see also Kinik Presentation*, at 11.

38. On information and belief, in each '802 Infringing Product, including the representative infringing product, the plurality of working superabrasive particles includes at least 100 working superabrasive particles (e.g., "~200"). *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 27 ("All (~200) of the working diamonds on the Pyradia disc exhibit a protrusion height range of less than 10 µm").

39. On information and belief, in each '802 Infringing Product, including the representative infringing product, the plurality of working superabrasive particles includes at least 1000 working superabrasive particles. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 22 ("HEIGHT CONTROL New disks designs require fixed and control diamond protrusion. Standard disks have >20,000 diamonds to ensure consistent pad contact (consistency through averaging). Only a small fraction of true working diamonds.").

40. On information and belief, in each '802 Infringing Product, including the representative infringing product, the plurality of working superabrasive particles includes from about 1000 to about 6000 working superabrasive particles. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 22 ("HEIGHT CONTROL New disks designs require fixed and control diamond protrusion. Standard disks have >20,000 diamonds to ensure consistent pad contact (consistency through averaging). Only a small fraction of true working diamonds.").

41. On information and belief, in each '802 Infringing Product, including the representative infringing product, the plurality of working superabrasive particles includes from about 2000 to about 5000 working superabrasive particles. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 22 ("HEIGHT CONTROL New disks designs require fixed and control diamond protrusion. Standard disks have >20,000 diamonds to ensure consistent pad contact (consistency through averaging). Only a small fraction of true working diamonds.").

42. On information and belief, in each ’802 Infringing Product, including the representative infringing product, the plurality of working superabrasive particles include at least about 1000 working superabrasive particles that protrude from the rigid support substrate to distances within about 30 microns of one another. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 22 (“HEIGHT CONTROL New disks designs require fixed and control diamond protrusion. Standard disks have >20,000 diamonds to ensure consistent pad contact (consistency through averaging). Only a small fraction of true working diamonds.”).

43. On information and belief, in each ’802 Infringing Product, including the representative infringing product, the highest protruding tip of each of the plurality of superabrasive particles align along the designated profile with a tip variation of from about 10 microns to about 50 microns. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 27; *see also Kinik Presentation*, at 11.

44. On information and belief, in each ’802 Infringing Product, including the representative infringing product, the highest protruding tip of each of the plurality of superabrasive particles align along the designated profile with a tip variation of from about 20 microns to about 40 microns. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 27 (“The tallest 200 diamonds on the conventional disc exhibit a protrusion height range of 20 μm”)).

45. On information and belief, in each ’802 Infringing Product, including the representative infringing product, the highest protruding tip of each of the plurality of superabrasive particles align along the designated profile with a tip variation of less than about 20 microns. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 27; *see also Kinik Presentation*, at 11.

46. On information and belief, in each ’802 Infringing Product, including the

representative infringing product, the protrusions of the plurality of superabrasive particles produce cutting depths of less than about 20 microns when used to abrade a CMP pad. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 27; *see also Kinik Presentation*, at 11.

47. On information and belief, in each ’802 Infringing Product, including the representative infringing product, the protrusions of the plurality of superabrasive particles produce cutting depths of from about 1 micron to about 20 microns when used to abrade a CMP pad. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 27; *see also Kinik Presentation*, at 11.

48. On information and belief, in each ’802 Infringing Product, including the representative infringing product, the protrusions of the plurality of superabrasive particles produce cutting depths of from about 10 microns to about 20 microns when used to abrade a CMP pad. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 27.

49. On information and belief, in each ’802 Infringing Product, including the representative infringing product, the designated profile includes a configuration selected from the group consisting of a plane, a slope, a curved shape, a dome shape, and combinations thereof. *See, e.g.*, *Advances in CMP Pad Conditioning*, at p. 22 (“DIAMOND SHAPE controls pad cutting, surface asperity development and pad/disk interface interaction. Critical to design and control shape”); *see also id.* at p. 15:

**Table I. Conditioners designed to obtain various pad surface roughnesses and pad debris sizes**

| Conditioner ID | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| Diamond size (μm) | 130 | 130 | 130 | 165 | 165 | 165 | 225 | 225 | 225 | 225 |
| Conditioner down force (lbf) | 3 | 3 | 6 | 3 | 3 | 6 | 3 | 3 | 6 | 9 |
| Shape (S, sharp; M, medium; B, blocky) | S | M | M | S | M | M | S | M | M | B |
| Distance between diamonds (μm) | 315 | 450 | 650 | 315 | 450 | 650 | 315 | 450 | 650 | 650 |
| Mode size of pad debris (μm) | 16.6 | 20.8 | 22.8 | 22.9 | 22.9 | 24 | 26.7 | 27 | 27.7 | 29.2 |

Mode size of pad debris is the average of three measurements for each condition.

*See also Kinik Diamond & CBN Manual, available at* http://www.kinikusa.com/catalogue/ (last visited Feb. 5, 2020), at 9 (“Shapes of Abrasive Cross Section”) and 37 (“DG-Dressers”).

50. On information and belief, in each '802 Infringing Product, including the representative infringing product, the plurality of superabrasive particles is arranged across the support substrate in a predetermined pattern. *See, e.g., Kinik Presentation*, at 11

51. On information and belief, in each '802 Infringing Product, including the representative infringing product, the predetermined pattern includes an even distribution of the plurality of superabrasive particles spaced at a distance of from about 100 microns to about 800 microns. *See, e.g., Advances in CMP Pad Conditioning*, at p. 15:

**Table I. Conditioners designed to obtain various pad surface roughnesses and pad debris sizes**

| Conditioner ID | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| Diamond size (μm) | 130 | 130 | 130 | 165 | 165 | 165 | 225 | 225 | 225 | 225 |
| Conditioner down force (lbf) | 3 | 3 | 6 | 3 | 3 | 6 | 3 | 3 | 6 | 9 |
| Shape (S, sharp; M, medium; B, blocky) | S | M | M | S | M | M | S | M | M | B |
| Distance between diamonds (μm) | 315 | 450 | 650 | 315 | 450 | 650 | 315 | 450 | 650 | 650 |
| Mode size of pad debris (μm) | 16.6 | 20.8 | 22.8 | 22.9 | 22.9 | 24 | 26.7 | 27 | 27.7 | 29.2 |

Mode size of pad debris is the average of three measurements for each condition.

52. Discovery is expected to uncover the full extent of Kinik's infringement of the '802 Patent beyond the '802 Infringing Products already identified through public information.

53. Upon information and belief, Kinik has induced and continues to induce others to infringe at least one claim of the '802 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Kinik's partners and customers, whose use of the '802 Infringing Products constitutes direct infringement of at least one claim of the '802 Patent.

54. In particular, Kinik's actions that aid and abet others such as its partners and customers to infringe include advertising and distributing the '802 Infringing Products and providing instruction materials, training, and services regarding the '802 Infringing Products. On information and belief, Kinik has engaged in such actions with specific intent to cause

infringement or with willful blindness to the resulting infringement because Kinik has had actual knowledge of the ’802 Patent and knowledge that its acts were inducing infringement of the ’802 Patent since at least the date Kinik received notice based on the filing of this Complaint that such activities infringed the ’802 Patent.

55. Kinik’s acts of inducement include, without limitation: providing the ’802 Infringing Products to its customers and other third parties and intending them to use the ’802 Infringing Products with hardware, software, and other infrastructure that enable and/or make use of these products; providing information, advertising, and instructions for these products through its own and third-party websites (*see, e.g.*, http://www.kinikusa.com/conventional-grinding-wheels/diamond-dressers/ and http://www.kinik.com.tw/en-us/Products/CMPDiamondDisk.html); encouraging customers and other third parties to communicate directly with Kinik representatives about the ’802 Infringing Products for purposes of technical assistance as well as sales and marketing (*see*, *e.g.*, http://www.kinik.com.tw/en-us/Support/GlobalService.html (providing contact information to address sales, R&D, and technical concerns regarding the ’802 Infringing products); *see also* http://www.kinik.com.tw/en-us/Support/Contactus.html (providing a messaging platform for communicating same)); encouraging customers and other third parties to use the ’802 Infringing Products (e.g., http://www.kinik.com.tw/en-us/Products/CMPDiamondDisk.html (recommending the ’802 Infringing Products for purchase because they “are featured” with the infringing characteristics and elements); *see also* http://www.kinik.com.tw/upload/Product/Catalogue/CMPPadConditioner-us.pdf (discussing how the ’802 Infringing Products should be used and their associated benefits); *see also* http://www.ntcia.org.tw/WebMaster/uploads/images/1_images/products/20160511183952068.pd

f (explaining technical benefits of the representative infringing product)); and providing instructions on how to use the '802 Infringing Products including their applications (e.g., http://www.kinik.com.tw/en-us/Products/Catalogue.html (providing product tables, catalogs, and technical guides for the '802 Infringing Products); *see also* http://www.kinik.com.tw/upload/Product/Catalogue/KINIK_Catalogue_2018_us.pdf (offering instructions on which product to use based on application)).

56. Kinik performed acts of inducement despite its actual knowledge since at least the filing date of this Complaint and its knowledge that the specific actions it actively induced and continues to actively induce on the part of its customers and other third parties constitute infringement of the '802 Patent. At the very least, because Kinik has been, and remains, on notice of the '802 Patent and the accused infringement, it has been, and remains, willfully blind regarding the infringement that it has induced and continues to induce.

57. On information and belief, Kinik has contributed to, and continues to contribute to, infringement of Claims 1-21 of the '802 Patent pursuant to 35 U.S.C. § 271(c) by offering to sell or selling within the United States, importing and/or supplying in the United States without authority one or more components of the '802 Infringing Products (or products of which the '802 Infringing Products are components), including semiconductor wafers polishing tools, with the knowledge (at least as of the filing date of this Complaint) that such components and/or products are especially made or adapted for use in an infringement of the '802 Patent. The accused products are material components for use in practicing the '802 Patent and are not staple articles of commerce suitable for substantial non-infringing use.

58. For example, these components dress, condition, or support dressing or conditioning of polishing pads according to the claimed invention. Kinik supplied, and

continues to supply, the ’802 Infringing Products, or components thereof, with the knowledge of the ’802 Patent and with the knowledge that these components constitute critical and material parts of the claimed inventions of the ’802 Patent. Moreover, Kinik knows at least by virtue of its knowledge of its own products and the ’802 Patent that these components are especially made and/or especially adapted for use as claimed in the ’802 Patent and there is no substantial non-infringing use of these components.

59. Kinik has directly and indirectly infringed the ’802 Patent and is thus liable for infringement of the ’802 Patent pursuant to 35 U.S.C. § 271.

60. Plaintiff has suffered, and continues to suffer, damages as a result of Kinik’s infringement of the ’802 Patent.

61. Kinik has continued to infringe the ’802 Patent since at least as of the filing date of this Complaint, despite being on notice of the ’802 Patent and its infringement. Kinik has therefore infringed the ’802 Patent knowingly, willfully, deliberately, and in disregard of Plaintiff’s patent rights since at least as of the filing date of this Complaint, at least by infringing with actual knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of its direct and indirect infringement. As a result of at least this conduct, Plaintiff is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys’ fees and costs under 35 U.S.C. § 285.

62. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case. Plaintiff shall not be estopped for purposes of its infringement contentions or its claim constructions by the foregoing discussions on how the ’802 Infringing Products infringe the ’802 Patent. Plaintiff intends only that the foregoing discussions satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure, and that it should not

be construed as Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment for itself and against Kinik as follows:

A. A judgment that Kinik has infringed, and continues to infringe, Claims 1-21 of the '802 Patent;

B. A judgment that Kinik has induced infringement, and continues to induce infringement, of Claims 1-21 of the '802 Patent;

C. A judgment that Kinik has contributed to, and continues to contribute, to the infringement of Claims 1-21 of the '802 Patent;

D. A judgment that Kinik has willfully infringed Claims 1-21 of the '802 Patent;

E. A judgment awarding Plaintiff all damages adequate to compensate for Kinik's infringement, and in no event less than a reasonable royalty for Kinik's acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate allowed by law;

F. A judgment awarding Plaintiff treble damages pursuant to 35 U.S.C. § 284 as a result of Kinik's willful conduct;

G. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorneys' fees; and

H. A judgment awarding Plaintiff such other relief as the Court may deem just and equitable.

Dated: February 20, 2020

DEVLIN LAW FIRM LLC

*/s/ Timothy Devlin*
Timothy Devlin (No. 4241)
tdevlin@devlinlawfirm.com
Alex Chan (*pro hac vice* to be filed)
achan@devlinlawfirm.com
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorneys for Plaintiff,*
*Dr. Chien-Min Sung*